## UNITED STATES COURT OF INTERNATIONAL TRADE

SPYRA GMBH,

              Plaintiff,

    v.

U.S. CUSTOMS AND BORDER
PROTECTION; RODNEY S. SCOTT, in his
official capacity as Commissioner of U.S.
Customs and Border Protection; and the
UNITED STATES OF AMERICA,

              Defendants.

No. 26-02477

## COMPLAINT

COMES NOW, Plaintiff Spyra GmbH ("Plaintiff"), by and through its attorneys, alleges and states as follows:

1. Plaintiff is an importer, as defined in 19 C.F.R. 101.1, of merchandise into the U.S. subject to the challenged duties.

2. Beginning in February of 2025, through a series of executive orders, the President of the United States invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose new and substantial tariffs ("IEEPA Tariffs") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports. Plaintiff is responsible for paying these tariffs on the imported goods. Plaintiff paid the tariffs on the imported goods.

3. On February 20, 2026, the U.S. Supreme Court struck down these tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

4.      The Supreme Court also confirmed that challenges to the IEEPA tariffs fall "within the exclusive jurisdiction of" the Court of International Trade. *Id*. at 5. Thus, this court has jurisdiction and authority to order remedial relief and refunds of IEEPA duties paid by importers.

5.      Accordingly, for reasons set out in *Learning Resources*, Plaintiff seeks for itself a full refund from Defendants of all IEEPA Tariffs Plaintiff has paid to the United States.

### JURISDICTION

6.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. §2631(i). *See Learning Resources*, slip op. at 5, n.1.

7.      This Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a monetary judgment against the United States and can order any other appropriate civil relief. 28 U.S.C. § 2643(a)(1), (c)(1).

8.      Plaintiff has standing to bring this lawsuit because it is an importer of goods imported into the United States from countries subject to the IEEPA duties as implemented and collected by U.S. Customs and Border Protection ("CBP") that have been held by the Supreme Court to be unlawful. As a result of the executive orders identified in this lawsuit, Plaintiff has paid IEEPA duties to the United States and thus has suffered injury caused by those orders. The relief Plaintiff seeks from this Court would redress those injuries.

### PARTIES

9.      Plaintiff Spyra GmbH is a private German company, incorporated and registered in Germany.

10.     Defendant U.S. Customs and Border Protection is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

2

11.     Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity only.

12.     Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. §702 and 28 U.S.C. §1581(i)(1)(B).

13.     Defendants are referred to collectively herein as "CBP".

## STATEMENT OF FACTS

### I.     Invoking IEEPA for Authority, the President Enacts a Series of Tariffs.

14.     On January 20, 2025, the President declared a national emergency pursuant to section 201 and 301 of the National Emergencies Act, Pub. L. No. 94-912, 90 Stat. 1255 (1976) (50 U.S.C. §§1601-1651) in Proclamation No. 10886, 90 Fed. Reg. 8,327, 8,327 (Jan. 20, 2025).

15.     On February 1, 2025, the President issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order was premised on IEEPA authorizing the tariffs. *See* Exec. Order No. 14193, 90 Fed. Reg. 9113 (Feb. 7, 2025); Exec. Order No. 14194, 90 Fed. Reg. 9117 (Feb. 7, 2025); Exec. Order 14195, 90 Fed. Reg. 9121 (Feb. 7, 2025).

16.     The executive order directed at Mexico imposes an additional 25% tariff on the import of goods from Mexico, with certain exceptions. *See* Exec. Order No. 14194.

17.     The executive order directed at Canada also imposed an additional 25% tariff, with certain exceptions. *See* Exec. Order No. 14193.

18.     The executive order directed at China imposed an additional 10% *ad valorem* tariff on products from China imported into the United States, on top of existing duties. *See* Exec. Order No. 14195.

19.     On February 5, 2025, the President issued Executive Order 14200, 90 Fed. Reg. 9,277 (Feb. 11, 2025), amending the duties addressing the synthetic opioid supply chain in China.

3

205984854

20.     On March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, 90 Fed. Reg. 11,463 (Mar. 7, 2025). Executive Order 14,228 raised the incremental tariffs on imports from China to 20%.

21.     On April 2, 2025, Executive Order 14257, 90 Fed. Reg. 15,041 (Apr. 7, 2025), which declaimed a national emergency pursuant to the National Emergencies Act, citing trade deficits with our trading partners as a national emergency. Executive Order 14257 imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, 2025, and imposed additional "reciprocal" tariffs on 57 countries, effective April 9. *Id*. at Annex I. These country-specific tariffs ranged from 11% to 50%. *Id*.

22.     On April 8, 2025, in response to retaliatory tariffs from China, the President raised the reciprocal tariff rate on China from 34% to 84%. Exec. Order. 14259, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

23.     On April 9, 2025, the President suspended the country-specific tariffs for 90 days, for all countries except for China, for which he raised the "reciprocal" tariff a second time, from 84% to 125%. Exec. Order No. 14266, 90 Fed. Reg. 15,625 (Apr. 15, 2025). The 20% tariff on imports from China remained in place, such that most imports from China faced a minimum 145% IEEPA tariff.

24.     On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections, et al. v. Trump, et al.*, No. 25-cv-00066 (Dkt. 2). This Court held the executive orders unlawful, and the Federal Circuit, sitting *en banc*, affirmed. In turn, the Supreme Court affirmed the Federal Circuit's decision on February 20, 2026.

25.     In the months following the *V.O.S. Selections* complaint, the President issued additional executive orders imposing additional tariffs and modifying orders.

26.     Each of these executive orders relies on IEEPA as the asserted source of authority for imposing tariffs and directs the Harmonized Tariff Schedule of the United States ("HTSUS")

4

to be modified so that the IEEPA tariffs may be collected by CBP at the time of entry. The aforementioned tariffs are referred to collectively herein as "IEEPA Tariffs".

27. CBP continued to collect duties imposed by the IEEPA Tariffs during the pendency of the *V.O.S. Selections* litigation and related litigation. Only on February 22, 2026 did CBP announce that duties imported under the challenged executive orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb. 22, 2026).[1]

28. By this Complaint, Plaintiff seeks relief as a result of all duties it has paid or will pay to the United States arising from the IEEPA Tariffs.

**II.    CBP's Implementation and Collection of IEEPA Tariffs.**

29. CBP is charged with the assessment and collection of duties on imported merchandise. *See* 19 U.S.C. §§1500,1502.

30. CBP classifies merchandise imported into the United States constituent with the HTSUS, which set out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. §1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id*.

31. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. §152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. §1202) as interpreted by administrative and judicial rules.").

---

[1] Available at https://content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9?wgt_ref=USDHSCBP_WIDGET_2.

205984854

32.    The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §1202, 3005, 3006; *see also Michael Simon Design, Inc., v. United States*, 33 C.I.T. 1003, 1010, (2009) ("The authority to modify the HTSUS lies with the President.").

33.    When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§1202, 1500, 1502.

34.    In connection with the IEEPA Tariffs, CBP has collected additional duties by requiring importers to report secondary HTSUS classifications, including Chapter 99 subheadings, that correspond to the duty rates mandated by the IEEPA Tariffs and associated executive orders.

35.    CBP later finalizes duties payable for each entry through the liquidation process. Liquidation is the "final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. §159.1.

36.    Typically, when goods are imported into the United States, the importer of record pays an estimated duty on the entry based on its customs declaration, which asserts a value, origin, and HTSUS classification for the imported goods. *See* 9 U.S.C. §1484.

37.    CBP then reviews the customs declaration and may inspect the goods. CBP subsequently affixes the final appraisement of merchanded by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. §1500.

38.    Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. §1504(b).

205984854

39.    Liquidation must happen within one year, unless extended. *See* 19 U.S.C. §1504(a). Typically, CBP liquidates entries 314 days after the date of entry of the goods and will post a notice on its website. 19 C.F.R. §159.9.

40.    CBP has the discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. §1504(b)(2); 19 C.F.R. §159.12(a)(1)(ii).

41.    Once liquidation has occurred, and if the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the duties. *See* 19 U.S.C. §1514. Not all liquidations are protestable: where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.; see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

42.    In *AGS Co. Automative Sol. v. U.S. Customs and Border Protection, et. al.*, No. 25-00255 (Ct. Int'l Trade, Dec. 15, 2025) ("*AGS*"), a three-judge panel of this Court confirmed this Court's authority to reliquidate entries subject to the IEEPA duties. *Id*. In a related action, the government has represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection, et. al.*, No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade, May 23, 2025).

**III.    The Supreme Court has Held the IEEPA Tariffs are Not Authorized.**

43.    On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

44.    The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

205984854

45.    Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

46.    In a separate lawsuit filed by another group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but prior to arguments, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with argument on November 5, 2025.

47.    On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, slip op. at 20.

**IV.    The Court of International Trade Enters a Universal Injunction.**

48.    On March 4, 2025, Judge Eaton entered an order directing CBP to liquidate any and all unliquidated entries that were entered subject to the IEEPA duties without regarding to the IEEPA duties, and to reliquidate without regard to IEEPA duties any liquidated entries for which liquidation is not final. *Order*, *Atmus Filtration, Inc. v. United States*, No. 1:26-cv-01259-RKE (Ct Int'l. Trade, March 4, 2026), ECF No. 21.

49.    On March 6, 2026, Brandon Lord, Executive Director of Trade Programs at CBP, filed a declaration stating, in relevant part, that CBP "can develop and implement new … functionality" in CBP's Automated Commercial Environment (ACE) "that will streamline and consolidate refunds and interest payments on an importer basis." *Declaration of Brandon Lord*,

205984854

*Atmus Filtration, Inc. v. United States*, No. 1:26-cv-01259-RKE (Ct Int'l. Trade March 4, 2026), ECF No. 31.

50.    In response to the Declaration of Brandon Lord, on March 6, 2026 Judge Eaton entered an order suspending the March 4th order to the extent that it directed immediate compliance. *Order*, *Atmus Filtration, Inc. v. United States*, No. 1:26-cv-01259-RKE (Ct Int'l. Trade, March 4, 2026), ECF No. 33. Jude Eaton also issued an order directing CBP to file a report by 2:00p.m. on March 12, 2026 describing the progress that CBP has made towards development of a process to issue refunds of all IEEPA duties paid, with interest. *Order*, *Atmus Filtration, Inc. v. United States*, No. 1:26-cv-01259-RKE (Ct Int'l. Trade, March 4, 2026), ECF No. 34.

51.    Neither the March 4 or March 6, 2026 orders addressed refunds for entries where liquidation has already become final and for which IEEPA Tariffs have been paid.

52.    Given the current legal uncertainty, this action is ripe and ready for review.

**V.    Plaintiff has Paid IEEPA Duties.**

53.    Plaintiff has imported goods subject to the IEEPA Tariffs.

54.    In connection with those imports, CBP has assessed IEEPA Tariffs on Plaintiff's entries, and Plaintiff has paid IEEPA Tariffs as required for entry.

<u>STATEMENT OF CLAIMS</u>

**COUNT I**
**THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL AS SET FORTH BY THE**
**SUPREME COURT IN *LEARNING RESOURCES***

55.    The allegations in the foregoing paragraphs, and the paragraphs that follow, are realleged and incorporated herein by reference as if fully set forth in this paragraph.

56.    In *Learning Resources*, the Supreme Court held that the President exceeded his authority under IEEPA, 50 U.S.C. §1701 et. seq., when he imposed tariffs on imported goods, including, but not limited to the IEEPA Tariffs discussed herein. *Learning Resources*, slip op. at 20.

9

205984854

57.    The Supreme Court held that all tariffs imposed under IEEPA are unlawful. "Our task … is to decide only whether the power to 'regulate importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not." *Id.* at 16. The Supreme Court thus affirmed the Federal Circuit's decision, which in turn has affirmed this Court's ruling on the merits of the IEEPA Tariffs. *Id.* at 21.

58.    The challenged IEEPA Tariffs and associated executive orders purport to impose duties and modify the HTSUS solely under IEEPA.

59.    Plaintiff respectfully requests that this Court apply its precedent, the binding decision of the Federal Circuit, as affirmed by the Supreme Court, and find the challenged IEEPA Tariffs and associated executive orders unlawful as to Plaintiff, permanently enjoin Defendants from enforcing them as to Plaintiff, and order refund of all IEEPA duties collected from Plaintiff, with interest as provided by law.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

(1)    order CBP to reliquidate any entries that have been liquidated with IEEPA Tariffs;

(2)    order CBP to liquidate all unliquidated entries subject to IEEPA Tariffs without IEEPA Tariffs;

(3)    order the United States to refund to Plaintiff the duties collected from Plaintiff on all entries subject to IEEPA Tariffs, with interest as provided by law, through liquidation or reliquidation as necessary, or alternatively enter a money judgment in the same amount;

205984854

(4)    with respect to Plaintiff, permanently enjoin Defendants from imposing and enforcing any tariffs set out in the HTSUS that are based on the challenged IEEPA Tariffs;

(5)    award Plaintiff interest as established by law on all amounts refunded and all money judgments, pursuant to 19 U.S.C. §1505(c), and as otherwise provided by law;

(6)    award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

(7)    grant any and all such further relief as this Court deems proper.

Dated: March 25, 2026

Respectfully submitted,

/s/ David J. Garrett

David J. Garrett
MAYNARD NEXSEN, PC
4141 Parklake Ave.,
Suite 200
Raleigh, NC 27612
919-755-1800
dgarrett@maynardnexsen.com
*Counsel to Spyra GmbH*

11

12

205984854